And our final case this morning is Roh v. Starbucks, case number 164033. Mr. Gibbs, whenever you're ready. May it please the Court. Bill Gibbs on behalf of B.B. Roh, mother and next friend of Marcus Roh, a three-year-old boy whose finger was traumatically amputated at a Starbucks store when a stanchion fell onto that finger and cut off the finger at the store. There is much discussion and much writing about what a stanchion is. This particular stanchion at this particular store is very unique in its characteristics. This stanchion was a wrought iron stanchion which had been purchased probably through an antique store originally manufactured in the late 1800s, weighed about 30 pounds, and was placed in this store for aesthetic purposes. But, Mr. Gibbs, with any type of metal stanchion, regardless of whether it's bolted to the floor, wouldn't a parent appreciate the risk of injury posed by a child climbing upon a stanchion or swinging from the ropes as the other child was between the stanchions? No. In this case — Did you say no? No. I said no. Oh, okay. No, Your Honor. A parent would not appreciate that this type of stanchion would fall. Part of the reason is these stanchions are all over the Chicagoland area. In fact, the jurors in this case, if and when this case is tried, will walk over to the potbellies on Dearborn Street and see this exact type of stanchion, the wrought iron stanchions, which are actually affixed to and bolted to the floor. And that's the way the designer intended it to be. He designed these at potbelly stores all throughout the region. I think he said there was about 300 different stores that he has put these types of stanchions into. And on every occasion, he bolts them to the floor. And the reason is because if you don't bolt them to the floor, these are big, heavy wrought iron things that can fall and injure people. And so when he put this into the Starbucks store, he told the folks at Starbucks, you have to bolt these to the floor. If you don't, they pose a very severe safety risk to people. And he recommended it to them. And Starbucks said, we appreciate that recommendation, but this is a very unique store. This is on Rush Street. And this store is going to be kind of a new and unique store, and it has a very cool floor. And we don't want to start putting holes in the floor and then have to later on move those holes. That won't look so good for our store. So we want a different idea. And so what happened then was the stanchion was affixed to sort of a concrete bucket, if you will, at the bottom. With Mr. Punky, the designer and installer, saying to Starbucks, once you figure out exactly how people are going to go through your store, how the line is going to form, how they're going to move through, because that's your concern, that's why you won't follow my recommendation. Once you figure that out, you really need to bolt them to the floor. And, again, it's a safety concern, and it's not something that a parent would expect. I, as a parent, would expect that those would be bolted into the floor just like the thousands of other stanchions that I've seen in Potter Belly stores throughout the region. And that is exactly what the designer recommended. The question then is, did Starbucks have a duty to this young boy? I think everyone agrees that under any basis of Illinois law, there was a duty here, whether it's the duty of Ward and Burger King, which is sort of the foreseeability analysis, whether it's Rowe, where if you create a danger, you have a duty to warn against it or remove that danger, whether it's Kahn, where there's sort of a heightened duty, when you know there's a dangerous condition and children may frequent the area. And so there certainly was a duty. And the question below, which is the question I believe that Your Honor is addressing, is whether that duty is abrogated, whether Starbucks is absolved of their duty because they would think that parents would avoid it. And in order for a duty to be absolved or abrogated, it must be an obvious danger. And we go back to the restatement of torts. There are three generally recognized obvious dangers, fire, water, and a fall from height. Restatement, second of torts, and we go back to our torts classes. There's a second component of the abrogation doctrine in Illinois that's actually where the pressure point of this case is. It's not the obviousness issue. It's whether the parents were aware of the condition, and they clearly were because they saw it. And that is enough to abrogate the duty, as I understand Illinois law. So you're exactly right. Whether it's sort of obvious, sort of in the line of the open and obvious. Right. It's not fire. It's not water. So we're not in the line of the doctrine. Or if you're aware of the dangerous propensities. You have to be aware of the dangerous propensities. It's obviously dangerous to let your kids swing on these stanchions with the ropes that are meant to separate people in a line at Starbucks or any other fast food place. Because they may fall and injure their elbow on their way down, not because it will topple over and traumatically amputate their finger. You don't have to anticipate the specific injury. All you have to do is anticipate that this could be dangerous to the child, as I understand the Illinois doctrine. We don't have this in Wisconsin, so this was new to me. But apparently this is what Illinois does. This is a duty cutoff. And it's actually a very specific and fact-specific inquiry. And the two cases that we rely upon, the Harris v. Walmart store, where the young boy was running through the store and ran into a post because he didn't realize and the parent didn't realize that there was a metal post behind the clothing that he ran through. Obviously, in the store, the parent would have known that there were posts. The parent would have known that there were potential dangers to a child running through. This is not like that. This was open. This was not hidden. The stanchion itself was, but its dangerous nature was not. The only way I can analogize it is I see the carpet in this room, and I know that there is carpet here. And I know that if my kids run through this room, they might trip and fall on the carpet. That would be contempt of court. Pardon me? That would be contempt of court. Correct. But if there's a hole that's underneath the carpet that I can't understand is dangerous and I don't know is dangerous, and my children are running and they go into that hole and break their ankle, that's this case. And that's the Perry case where I know that at a restaurant that serves dim sum brunch, there might be hot tea. And I know there's a Lazy Susan, and I see the Lazy Susan. But I don't know that the person at the restaurant has put that hot tea onto the Lazy Susan, and I don't know that the 3-year-old that's sitting at the table is going to spin it and that the hot tea is going to fall and hit my baby in the carriage and burn 10%. Right. Again, the parent in that case didn't see the waitstaff put the hot tea on the Lazy Susan. So they didn't apprehend the condition. Correct. They were not aware of the danger. They were not aware of the danger. They were aware. They didn't apprehend the thing that was dangerous. At the bottom of each stanchion, the stanchion, they can see that they're not bolted to the floor. And certainly from the photographs, it appears obvious that the stanchions were quite heavy. And, you know, given the obvious nature of the danger, it really doesn't matter whether Mr. and Mrs. Rowe were subjectively aware of the danger. And nor does it matter that Starbucks might have been on notice because of the creator's recommendations that they could fall. Respectfully, I disagree, and I believe that's the classic jury question. I think Judge McCuskey in Harris had it exactly right. When faced with this question of whether it's so inherently either obvious or whether a reasonable person would be aware of its danger, you put that to the jury and you let the jury decide whether or not this is a dangerous condition that a reasonable person would have been aware of. And our position is that at the summary judgment stage, the district court should not have taken that away from the jury and granted summary judgment, which is why we respectfully request that this court reverse a summary judgment and remand for trial on the merits. Thank you. May it please the Court. Good afternoon. My name is Andy Miller on behalf of Starbucks. There are three basic arguments, and I think that Your Honors have talked about them in counsel's presentation, but there are three basic arguments that we made at the summary judgment stage and are now making in response to this appeal. The first, which has been talked about already, is that Starbucks is absolved of any duty to Marcus Rowe since he was under the supervision of his parents at the time of the incident. The second is that there's no duty to protect because this particular event wasn't reasonably foreseeable. And the third is that the claim regarding active negligence must be ignored. Moving on to the first argument, the law is very clear in Illinois that the responsibility for the safety of a child lies primarily with the parents. In granting summary judgment, the district court correctly applied a line of very unambiguous cases. Those cases hold that the law absolves business owners of liability for an injury to a child accompanied by a parent if the danger is known or should be obvious to the parent. In this case... Is this an attractive nuisance insofar as children are concerned? I'm sorry, Your Honor? Is this an attractive nuisance insofar as little children are concerned? It's not an element of any of these cases, Judge. It wasn't talked about in any of these cases. I suppose arguably, as they talk about in some of the cases, that it is common sense, for instance, that a child might be drawn to a floor buffer machine at a Walmart. It's common sense that a child might be attracted to a swimming pool, which is what one of the cases is about. But the attractive nuisance doctrine is not discussed in these cases specifically. In this case, there's no dispute that Marcus Rowe was accompanied and should have been more closely supervised by his parents on the day of the incident. There's no dispute that the parents observed the stanchions. They saw the stanchions.  They were standing next to the stanchions, which the appellant describes in the brief as being unusually heavy stanchions. The argument, as I understand it, is that Starbucks duty can only be abrogated if the parents were specifically aware of the dangerous condition. That's an argument that ignores the case law. That is an argument that was rejected by the court in Harlan. That was an argument that was rejected by the court in Blackford. In Harlan, the mother specifically testified that, quote, she did not perceive anything dangerous about the stand which caused the injury. The same argument in Blackford when the plaintiff's mother claimed to, quote, not have any reason to know that it could be dangerous when referring to a buffer machine. In both of those cases, that was the same argument being advanced by the plaintiff that's being advanced here. In both of those cases, summary judgment was granted. Significantly, the Harlan court, and I just talked about this, went on to explain that it is a matter of common sense that a child would be hurt or could be hurt by a displace hand. Blackford explained it's a matter of common sense that a young boy might be attracted to and become injured by a buffer machine. The case here is even more compelling that it is a matter of common sense that if you let your kids climb up onto a very heavy stanchion and let your other son swing on the rope in a crowded store at Oak and Russ in Chicago, that an injury might occur. This is precisely the reason that Judge Zago correctly pointed out that, quote, this abrogation can take place even if the parent does not appreciate the danger of the particular condition prior to the injury. The second argument that we make also would form the basis for the entry of summary judgment separately is that the incident wasn't reasonably foreseeable. As the Eau Claire case instructs, to establish reasonable foreseeability, plaintiffs must show that the occurrence was, quote, objectively reasonable to expect, end quote, not that it's just a possibility. It's been said that hindsight makes every occurrence foreseeable and anything is foreseeable after it happens. Here there's no evidence even suggesting that Starbucks should have anticipated that a young boy would be permitted to climb on a stanchion at the very moment that his brother was permitted to swing from the ropes of that stanchion. Not only had this type of incident never happened before, there's no proof that children had ever even played on the stanchions. This event was not objectively reasonable to expect and accordingly was not reasonably foreseeable. Is that what this doctrine in Illinois is aimed at, the foreseeability element of the duty equation? It is, Your Honor. In fact, the Kahn case, the Illinois Supreme Court states, and I quote, the true basis of liability is the foreseeability of harm to the child, end quote. So foreseeability is a factor in the duty element. Well, I'm aware of that. Yes. But I'm asking what is the theoretical foundation of this duty of abrogation to protect against risks to children? I mean, I asked the question in terms of foreseeability. Is it that the parental responsibility eliminates the foreseeability element, or does it go to something else in the duty equation? They're sort of two separate issues, Your Honor. The abrogation line of cases is perhaps a little bit different than the foreseeability line of cases. They're two separate arguments, either of which would have supported the entry of summary judgment. Well, we have to analyze them separately then. Yes, yes. So everyone, I guess, is conceding that every step in the duty equation is satisfied here, and what we're talking about is the question of abrogation. No, I'm not. I'm saying that there was no duty because the incident was not reasonably foreseeable, and because the incident was not reasonably foreseeable, there's no duty under Illinois law. Separate from the abrogation issue? Yes, yes. So they're two separate arguments, Your Honor. Lastly, and this really wasn't talked about by Mr. Gibbs, but there is a claim that because there's an allegation of active negligence that this abrogation doctrine in Illinois should be treated differently. As the district court noted and is still true today, there is no case law authority for that proposition and should be ignored by the court. Unless Your Honors have any additional questions, I rest. Thank you. Your Honor. How much time? No time left. Oh, I'm sorry. You had used up all your time. I've used up all my time. I thought you had more time left. I'll give you a minute if you have something in response to your opponent. Just very quickly, this was reasonably foreseeable. The store employee, Jen Turner, who was the store manager, had been injured by this exact same stanchion when she tried to step over a rope while she was carrying some things, accidentally touched the rope, and the stanchion came down on her leg and caused her injury. She advised Starbucks of that. She advised that this is a problem, that this is going to be a safety issue for patrons. Obviously it was reasonably foreseeable. And the final thing I will mention is that the policy behind this law is that stores do not have to protect against things that they presume that the parent will keep their child away from. And the idea is, I will keep my child away from a pond. However, there is a case, Pastor versus Hanover Park, where a 7-year-old drowns because there's a thin layer of ice and it's covered by snow. And I, as the parent, can't comprehend that that is a pond and that the pond is dangerous. I think it's an open field, and therefore there's liability in a case like that where there's a hidden danger. Thank you very much for your time this morning. All right, thank you. The case is taken under advisement, and that concludes our calendar for today. The court will stand and recess.